In re GENERAL INSTRUMENT
SECURITIES LITIGATION

No. CIV.A. 01–3051.

United States District Court,
E.D. Pennsylvania.

Dec. 27, 2001.

Jared Specthrie, Brian C. Kerr, Paul D. Young, David J. Bershad, Milberg, Weiss, Bershad, Hynes & Lerach, Lewis S. Sandler, Kirby, McInerny & Squire LLP, Jeffrey Squire, Kaufman, Malchman, Kirby & Squire, LLP, New York City, Gregory C. Vamos, Winston & Strawn, Ronald L. Futterman, Futterman & Howard, Chtd., Stanley Allen Schlitter, Jenner & Block, J. Michael Williams, Cohon, Raizes & Regal,

Frederick R. Ball, Duane, Morris & Heckscher LLP, Chicago, IL, Allan Steyer, Suzanne R. Sullivan, Jeffrey H. Lowenthal, Steyer, Lowenthal, Boodrookas & Walker LLP, San ·Francisco, CA, Daniel E. Bacine, Sheldon E. Albert, Jeffrey W. Golan, Barrack, Rodos & Bacine, Philadelphia, PA, for plaintiffs.

Ronald S. Betman, Steven L. Bashwiner, Mary Ellen Hennessy, Katten, Muchin & Zavis, Sean M. Berkowitz, Rene Devlin, John P. Lynch, Latham & Watkins, Chicago, IL, Steven E. Bizar, Howard D. Scher, Thomas P. Manning, Buchanan Ingersoll Professional Corp., Philadelphia, PA, for defendants.

### *MEMORANDUM*

REED, Senior District Judge. ·

Presently before the Court in this securities class action is the Motion of Co-lead Counsel for Plaintiffs in Support of the Proposed Class Settlement and the Joint Petition for an Award of Counsel Fees and Reimbursement of Expenses, (Document No. 91), the Memorandum of Law of Plaintiffs in Support of Their Motion for Final Approval of the Proposed Settlement and the Plan of Allocation, (Document No. 89), the Memorandum of Law of Plaintiffs in Support of Their Application for Attorneys' Fees and Reimbursement of Expenses, (Document No. 90), the Memorandum of Law of Plaintiffs in Further Support of Their Motion, (Document No. 96), and the Memorandum of Law of Defendants in Support of Final Approval of Class Settlement, (Document No. 97). This Court held a Fairness Hearing on December 20, 2001. For the reasons which follow, this Court will approve the Class Action Settlement, the Plan of Allocation and the Application for Attorneys' Fees and Reimbursement of Expenses; this Court will approve· the request ·for

incentive awards upon receipt of affidavits in support thereof.

## I. BACKGROUND

This consolidated securities class action was brought pursuant to section 10(b) and of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder, and section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), on behalf of persons who purchased common stock of General Instrument between March 21, 1995 and October 18, 1995. In short, plaintiffs alleged in the second amended complaint that defendants intentionally or recklessly misrepresented or failed to disclose material information with respect to the development and delivery of certain General Instrument new products, as well as the company's gross margin expectations. Plaintiffs further asserted that those misrepresentations and omissions caused General Instrument's stock price to be artificially inflated during the class period thereby injuring plaintiffs. The allegedly false statements were made during two separate telephone conference calls with securities analysts, held respectively on April 17, 1995 and July 19, 1995, as well as during a road show which took place in April 1995. In September and October 1995, General Instrument announced its third quarter margins. After these announcements, the price of General Instrument stock fell approximately $7, from $27 per share to $20 per share.

The price declines in General Instrument stock led to the filing of twelve securities class actions, five of which were filed here in the Eastern District of Pennsylvania, and seven of which were filed in the Northern District of Illinois. On November 8, 1995, defendants moved this Court to transfer those cases filed in Philadelphia to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a), on the ground that Chicago was the more appropriate location for the coordinated litigation because the company was then headquartered in Chicago. Plaintiffs opposed that motion and certain plaintiffs filed their own motions to transfer the cases filed in Chicago to the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1407. In February 1996, the Judicial Panel on Multidistrict Litigation ("MDL Panel"), upon conducting a hearing on the matter, entered an order transferring the Philadelphia cases to the Northern District of Illinois.

On April 17, 1996, Judge George Marovich consolidated the cases with a derivative class action for discovery purposes only, pursuant to Federal Rule of Civil Procedure 42(a). Judge Marovich appointed Milberg Weiss Bershad Hynes & Lerach LLP and Kirby McInerney & Squire, LLP as co-lead counsel for the plaintiffs and further ordered plaintiffs to file a single consolidated class action complaint which plaintiffs filed on or about August 9, 1996. On December 2, 1996, defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). On September 24, 1997, after extensive briefing by the parties, Judge Marovich granted the motion to dismiss, but also granted plaintiffs leave to amend. Plaintiffs filed the second consolidated complaint on or about November 7, 1997. Defendants served their answers on January 30, 1998.

The parties then proceeded with extensive discovery. The document requests resulted in the production of more than 100,000 pages of documents from defendants and third parties, including analysts and General Instrument's customers and auditors. Plaintiffs also noticed and took depositions of approximately 60 individuals, including the individual defendants, current and former General Instrument employees, as well as numerous third par-

ties. In all, plaintiffs took over 80 days of depositions which resulted in approximately 17,000 pages of deposition transcripts. The depositions occurred in cities located throughout the United States. The parties briefed more than 40 motions relating to discovery.

On August 26, 1996, plaintiffs moved to certify the class with five lead plaintiffs as the class representatives pursuant to Federal Rule of Civil Procedure 23. Defendants deposed those individuals and, based in part on those depositions, opposed the motion of plaintiffs. The Court found that the prerequisites for class certification had been met and granted the motion of plaintiffs on November 15, 1999. Defendants filed an interlocutory appeal which they later withdrew. Counsel for plaintiffs obtained lists of purchasers of General Instrument shares consistent with the class certification decision and mailed notices to the class in March, 2000. There were 29 timely requests for exclusions and 6 late requests for exclusion. (Document No. 92, Cheryl Washington Aff. ¶ 7.)

On June 17, 1999, Judge Marovich recommended to the MDL Panel, upon a motion by the plaintiffs, that the actions centralized in the Northern District of Illinois be remanded and transferred to the Eastern District of Pennsylvania for the remainder of the pretrial proceedings. The MDL Panel, however, denied the motion as premature. The consolidated actions were then reassigned to Judge Harry D. Leinenweber in the Northern District of Illinois. The parties next proceeded to complete merits discovery and to commence expert discovery.

On November 12, 1999, plaintiffs served and filed an expert report on damages conducted by their retained damage expert Dr. Blaine Nye of the Stanford Consulting Group. On February 29, 2000, defendants served and filed expert reports from Dr. Michael Gibbons, the I.W. Burnham II

Professor of Investment Banking and Chairman of the Department of Finance at the Wharton School of the University of Pennsylvania, and Dr. Allan Kleidon, Senior Vice President at Cornerstone Research and a consulting professor of law at the School of Law of Stanford University. On June 28, 2000, defendants filed a motion to exclude the testimony of Dr. Nye. Lengthy submissions were filed by both parties. On November 22, 2000, Judge Leinenweber denied the motion pursuant to *Daubert* and its progeny.

On June 5, 2000, defendants filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, which Judge Leinenweber granted in part and denied in part on November 22, 2000. Following this adjudication, plaintiffs again moved the MDL Panel to remand and transfer the action to this Court, which defendants opposed. On April 20, 2001, the MDL Panel granted the motion of plaintiffs.

The parties began preparing for trial, and this Court scheduled the anticipated seven week trial to begin on October 22, 2001, with jury selection to occur the week of October 15, 2001. Plaintiffs filed 4 motions *in limine*, and defendants filed 19 motion *in limine*, as well as a motion to bifurcate.

Before the action was remanded and transferred to this Court, the parties engaged in settlement discussions. During these negotiations, however, the parties expressed significant confidence in their respective positions with respect to both liability and damages, and no progress was made in resolving the litigation. After the action was remanded and transferred to this Court, I appointed Judge Charles R. Weiner to assist the parties in further settlement negotiations. After a settlement conference was held in his Chambers on July 16, 2001, Judge Weiner concluded

that the parties were too far apart to reach a settlement and that further efforts would prove futile.

Thereafter, the parties agreed to meet on October 1, 2001, in a final attempt to settle the case. By that time, the motions *in limine* had been filed in this Court. The parties engaged in a full day of negotiations at which time each side presented its views of the strengths of its case and the weaknesses of the other's positions. This marathon negotiation near the eve of trial resulted in the settlement presently before this Court which was preliminary approved by this Court on October 24, 2001.

Under the terms of the proposed settlement, defendants have agreed to pay $48 million in cash to be deposited in an interest-bearing account in the name of "General Instrument Securities Litigation: Settlement Fund" at Citibank, N.A. ("Gross Settlement Fund") on January 15, 2002. (Settlement Agreement ¶ 4.) Counsel for plaintiffs petition this Court for an award of 33 ⅓% of the settlement fund, plus reimbursement for expenses which total $1,851,773.86. (*Id.* ¶ 9.) In addition, counsel for plaintiffs move the court to approve incentive awards of $10,000 for four named plaintiffs in this action. (*Id.*)

Each member of the settlement class who files a timely proof of claim will receive a share of the Gross Settlement Fund, after payment of attorneys' fees, expenses and settlement administration ("Net Settlement Fund"). (*Id.* ¶¶ 15–17.) In accordance with the allocation plan, each member of the settlement class will receive a *pro rata* share of the Net Settlement Fund based on his, her or its net allowed claims. (*Id.* ¶ 14.) In consideration for the relief provided in the settlement, defendants are released from any and all claims that have been or could have been asserted by the class members against any of the defendants arising out of, or relating in any manner to, the allegations, facts, transactions, occurrences, representations or omissions that were or could have been involved, set forth or referenced in the consolidated actions. (*Id.* ¶¶ 2–3.)

On October 30, 2001, and pursuant to this Court's Order preliminarily approving the settlement, a total of more than 24,700 Notices were mailed to potential class members. (Cheryl Washington Aff. ¶ 5.) That Notice expressly informed class members how to file objections to the settlement. The members were instructed to file objections with the Clerk of the United States District Courthouse, Eastern District of Pennsylvania, no later than December 5, 2001. No objections were filed, and no objectors appeared at the fairness hearing. A Summary Notice was published in the national edition of *The Wall Street Journal* on November 6, 2001. (*Id.* ¶ 6.)

On December 20, 2001, this Court held a fairness hearing concerning the proposed settlement and payment of attorney's fees and costs, as well as the incentive awards. The Court has reviewed the extensive written submissions of the parties, and in light of those submission, and the hearing, I now turn to the merits of the instant motion.

## II. DISCUSSION

### A. *The Settlement*

█ Under Federal Rule of Civil Procedure 23(e), this Court acts as a fiduciary guarding the rights of absent class members and must determine whether the proffered settlement is "fair, reasonable and adequate." *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir.2001). The decision of whether to approve a proposed settlement lies in this Court's sound discretion. *See In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 782–83 (3d Cir.1995)

("GMC"). A proposed settlement which is negotiated at arms-length by capable counsel after meaningful discovery is presumed to be fair and reasonable. *See Grier v. Chase Manhattan Auto. Fin. Co.*, No. Civ. A. 99–180, 2000 WL 175126, at *5 (E.D.Pa. Feb. 16, 2000).

■ In reaching its decision, this Court is guided by the following factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) (cited in *In re Cendant Corp. Litig.*, 264 F.3d at 231–32). I now address those factors in turn.

■ First, this case is complex, and the trial would have been a lengthy, costly affair; as well, the parties have indicated that an appeal would likely follow. Securities cases are always complicated, and the extensive and time consuming discovery of this case indicate that this action is no exception. This case also involves highly technical issues relating to the development of sophisticated analog and digital electronic products, as well as the financial planning and strategies of a multifaceted corporation. Plaintiffs could not be certain that the jury would be able to understand these matters well enough to reach a factual determination in plaintiffs' favor. In addition, it was not clear how resolution of the formerly pending and never decided motions *in limine* would impact plaintiffs' ability to recover for any alleged damages. In settling the case, the class members receive immediate benefits without having to endure protracted litigation, which they may not win.

Second, more than 24,700 Notices have been mailed in this case, and to date, there has not been a single objector.[1] This barometer of the reaction of the class provides strong circumstantial evidence in favor of the settlement.

Third, the proffered settlement was reached after six years of intense and thorough discovery which included, *inter alia*, production of over 100,000 pages of documents and approximately 60 depositions, as well as consultation with and cross examination of expert witnesses. Counsel had engaged in significant motion practice. Plaintiffs were privy to defendants' trial strategies because they had the benefit of reviewing and assessing the motions *in limine* filed by defendants. Thus, the endorsement of counsel carries great weight because it comes after they have had ample opportunity to reach an informed judgment on the merits of the proposed settlement.

Fourth, while counsel for plaintiffs believed they had a strong case as to liability against defendants, such a finding was not guaranteed. Defendants had moved to exclude almost all of the evidence plaintiffs intended to introduce at trial. In this securities class action, plaintiffs faced a heavy burden in demonstrating, *inter alia*, that defendants were responsible for material misstatements or omissions of fact in connection with General Instrument's stock; that the class justifiably relied upon defendant's misconduct, and that they suf-

---

1. As noted above, there have been 29 timely requests for exclusion and 6 untimely requests for exclusion. (Cheryl Washington Aff. ¶ 7.)

fered damages as a result of that conduct. *See, e.g., Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 178, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Defendants' damage expert was prepared to testify that the statements, even if they constituted misstatements, had no material effect on the stock price, which had fluctuated for unrelated reasons.

Proving scienter was another uncertain and difficult necessity for plaintiffs. For instance, with respect to one of the alleged misstatements made in July, 1995, defendants intended to rely on a contemporaneous document that they would argue supported that statement, thereby giving the speaker a reasonable basis to make that statement. Many of the General Instrument witnesses were unable to recall events central to this case, or were certain to be hostile as former or present employees of General Instrument. Indeed, plaintiffs anticipated presenting most of their case through the hostile testimony of the individual defendants themselves. The majority of the remaining testimony would be introduced via videotape.

Thus, while it may have been possible to have obtained a higher recovery from a jury, that potential is discounted by the cost of litigation and the odds of securing no money in front of a jury rather than having millions to distribute.

■ Fifth, even if plaintiffs overcame the liability hurdles, they still faced risks in demonstrating damages. Under securities law, only the amount of the stock price inflation caused by defendants' misstatements or omissions is recoverable; thus expert testimony almost always becomes critical in order to establish the amount, as well as the existence, of damages. *See In re Greenwich Pharm. Sec. Litig.,* No. Civ. A. 92–3071, 1995 WL 251293, at *4 (E.D.Pa. Apr. 26, 1995). This aspect of the case sparked sharp disagreement among the parties' respective experts. Plaintiffs also faced the challenge of separating the impact of the fraud from the impact of a host of non-actionable forces proffered by defendants. While plaintiffs believed they had a strong case, they also accepted the reality that it would not be inconceivable that the jury would be more swayed by defendants' expert. Defendants' expert estimated that damages could not exceed $26.7 million in even the most liberal scenario. It was possible that the jury would divide damages up in ways unexpected by plaintiffs. Moreover, defendants moved to exclude the testimony of plaintiffs' expert. The risk of proving damages could not be eliminated until after a successful trial and exhaustion of all the appeals. These significant risks weigh in support of the proffered settlement.

Sixth, while the class was certified by Judge Leinenweber, this Court has the right under Federal Rule of Civil Procedure 23 to decertify or modify the class at any time during the litigation. Defendants may have successfully attempted to show a conflict among the named representatives. In addition, defendants filed a motion to bifurcate the trial, so that individual issues of reliance could be addressed in a separate proceeding. Settlement avoids any uncertainty with respect to this issue.

Seventh, given the strength of the other factors which weigh in favor of settlement, the question of General Instrument's ability to withstand a greater judgment is of less significance to the fairness analysis before this Court. *See In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 179 (E.D.Pa.2000). In addition, many of the defendants are individuals and there is no certainty that a jury would have focused on the corporate defendants rather than the individuals.

■ The eighth and ninth factors overlap with each other. As the Court of

Appeals for the Third Circuit has observed:

'in cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.' ... This figure should generate a range of reasonableness (based on size of the proposed award and the uncertainty inherent in these estimates) within which a district court approving (or rejecting) a settlement will not be set aside.

*GMC*, 55 F.3d at 806 (citations omitted). "[T]he fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement: rather, the percentage should be considered in light of the strength of the claims." *Ikon*, 194 F.R.D. at 183–84.

Here, plaintiffs have recovered 11% of the high-end range of damages reported by their expert and almost twice as much as the high-end of what defendants' expert opined could be recovered. Moreover, defendants had moved to exclude plaintiffs' expert, and even if that motion were denied, defendants would have cross examined the expert on his allegedly flawed analysis. Other difficulties that plaintiffs would face at trial with respect to proving liability and damages have been highlighted above. For instance, establishing scienter would be a difficult task, and defendants had proffered many nonfraudulent reasons for the stock price falling. In light of these hurdles, the proposed settlement is within the range of reasonableness.

■ Finally, I emphasize that each side was zealously represented by very experienced counsel after years of grueling litigation and lengthy settlement negotiations which involved face-to-face meetings and a conference with Judge Weiner. Judge Leinenweber, in certifying the class, determined that class counsel was "well-qualified" and was "vigorously litigating" the action. (Class Cert. Order at 9.) Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class. *See, e.g., Austin v. Pa. Dep't of Corrections*, 876 F.Supp. 1437 (E.D.Pa.1995).

■ "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *Ikon*, 194 F.R.D. at 184 (citation omitted). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id*. Here, claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock. I therefore conclude that the present plan is even handed.

For the foregoing reasons, I conclude that the proffered settlement and the proposed plan of allocation is fair, adequate and reasonable.

### B. *Attorneys' Fees*

■ As with all parts of a class action settlement, this Court must also review for fairness the petition for counsel fees. This Court must here determine whether a request for one third of the Cash Settlement Amount which amounts to $16,000,000 is proper. Two primary methods for calculating attorneys' fees exist: the percentage of recovery method[2]

---

**2.** This method " 'resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class.' "

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 n. 10 (3d Cir.2001) (quoting *GMC*, 55 F.3d at 819 n. 38).

and the lodestar method.[3] The Court of Appeals for the Third Circuit has determined that the former method is "generally favored" in cases such as this one which involve a common fund,[4] as it allows "courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732, 734 (3d Cir.2001) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir.1998) (explaining that 1985 Third Circuit Task Force report recommended that percentage fee arrangement be employed in traditional common fund situations)). The lodestar method, on the other hand, is more commonly used in statutory fee shifting cases. *See id.*

■■■ The Court of Appeals has articulated the following seven factors to guide this Court in determining a proper fee award:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000) (citations omitted). It is further recommended that the fee award be cross-checked with the lodestar method. *See id.* Ultimately, this decision lies in this Court's sound discretion. *See, e.g., Ikon*, 194 F.R.D. at 192–93. I now address those factors in turn.

■■■ First, the size of the settlement fund—$48 million—is quite large, and based on the fact that more than 24,700 notices have been mailed, it seems that thousands of individuals will benefit from this settlement. As detailed above, the amount represents twice the amount that defendants' expert claimed plaintiffs could recover under the best circumstances.

Second, it is particularly significant that, as already noted, there are no class objectors to the fee request. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706 (E.D.Pa.2001) ("Given the size of the Class and the amount of the counsel fees contemplated in the Notice, it is indeed remarkable that *no* Class member has objected to the possibility of a one-third recovery."); *In re Aetna Inc.*, No. Civ. A. MDL 1219, 2001 WL 20928, at *14 (E.D.Pa. Jan. 4, 2001) ("[T]he Class members' view of the attorneys' performance, inferred from the lack of objections to the fee petition, supports the fee award."). Of additional and special note here, is the fact that the class primarily exists of sophisticated institutional investors.

Third, as already addressed, counsel for plaintiffs are highly skilled and efficient attorneys. Counsel have supplemented the record with affidavits attesting to their experience. (Document No. 93, Compen-

---

**3.** "'A court determines an attorney's lodestar by multiplying the number of hours he or she reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer.'" *Cendant PRIDES*, 243 F.3d at 732 n. 11 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000)).

**4.** "'[T]he common-fund doctrine...allows a person who maintains a lawsuit that results in the creation, preservation, or increase of a fund in which others have a common interest, to be reimbursed from that fund for litigation expenses incurred.'" *Cendant PRIDES*, 243 F.3d at 732 n. 12 (quoting *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 241 (1985)) (alteration in original).

dium of Fee Affidavits). These submissions demonstrate that plaintiffs' counsel, particularly co-lead counsel, enjoy an extensive practice in the highly complex field of shareholder securities litigation. The quality and vigor of opposing counsel is also relevant in evaluating the services rendered by plaintiffs' counsel. *See, e.g., Ikon,* 194 F.R.D. at 194. Defense counsel also has considerable experience and an established, prominent corporate defense practice.

Fourth, as described in greater detail above, this litigation involved multiple complex issues and has been a hard fought battle for many years. As I have previously discussed this factor, I will not reiterate that analysis here.

Fifth, this case presented a high risk of non-payment. As described above, plaintiffs faced many obstacles in establishing both liability and damages. In addition, at the time of settlement, this Court had not yet ruled on the pending motions *in limine* filed by defendants, in which defendants moved to exclude almost all of the evidence relied upon by plaintiffs, including their expert. In addition, both sides indicated that an appeal was likely, furthering the risks presented here. As these many hurdles have been addressed at great length, I will not here repeat that analysis.

Sixth, plaintiffs' counsel have expended 38,774 hours and advanced $1.85 million in expenses over a six year period. (Document No. 93, Summary Chart contained in Compendium of Fee Affidavits.) Counsel have provided charts detailing the general nature of the work conducted. These hours unquestionably represent a significant commitment of time, personnel and out-of-pocket expense outlays to this case.

As to the seventh factor, there is no general rule as to what percentage is appropriate. One court has noted that fee awards range from 19% to 45% of the settlement fund. *See Ikon,* 194 F.R.D. at 194 (citing *In re Computron Software Inc.,* 6 F.Supp.2d 313, 322 (D.N.J.1998)). Similar percentage awards have been approved in this Circuit, even in cases with a larger settlement fund. *See, e.g., In re Unisys Corp. Sec. Litig.,* Civ. A. No. 99–5333, 2001 WL 1563721 (E.D.Pa. Dec. 6, 2001) (awarding one-third of $5,750,000 settlement fund); *In re Safety Components Inc. Sec. Litig.,* 166 F.Supp.2d 72 (D.N.J.2001) (awarding one third of $4.5 million settlement fund); *Ikon,* 194 F.R.D. 166 (awarding 30% for $111 million settlement fund);[5] *Aetna,* 2001 WL 20928 (awarding 30% for $82 million settlement fund); *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136 (E.D.Pa.2000) (awarding one-third of nearly $7.3 million settlement fund).

The one-third fee request finds additional support when it is cross-checked under the lodestar method. This method involves a two part process: (1) the court multiplies the number of hours worked with the normal hourly rate of counsel; and (2) the court is permitted to adjust the lodestar by applying a multiple to take into account the contingent nature and risks of the litigation, the results obtained and the quality of service rendered by counsel. *See Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.,*

---

**5.** The Court in *Ikon* noted that the only factor which weighed against approving a 30% fee was the fact that the settlement there was so large. *Ikon,* 194 F.R.D. at 195. The Court observed that courts have generally decreased the percentage where the settlement is very large, and marked $100 million as the tag for a "very large" settlement. *See id.* In *Ikon,* the Court was faced with an award over the $100 million marker and still approved a 30% request. Here, the settlement, while large in the abstract is still approximately half of the $100 million marker.

487 F.2d 161, 167–68 (3d Cir.1973) (cited in *Cendant PRIDES*, 243 F.3d at 732 n. 11).

Beginning with step one, counsel for plaintiffs expended 38,774 hours of prosecution in this case, at varying billable rates, which result in a total lodestar of $11,597,010.10. (Document No. 93, Summary Chart contained in Compendium of Fee Affidavits.) The lodestar multiplier is 1.38. Significantly, the Court of Appeals for the Third Circuit has observed that a survey of settlements indicate that the lodestar multiplier ranges from 1.35 to 2.99. *See Cendant PRIDES*, 243 F.3d at 742. The Court further noted that such a "range is consistent with the principle that '[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *Id.* (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir.1998) (quoting 3 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 14.03 at 14–5 (3d ed.1992))) (alteration in original). Clearly, the 1.38 multiplier here falls in the very low end of the appropriate range.

For the foregoing reasons, I conclude that the requested fee petition will be approved.

### C. *Reimbursement of Costs*

 Class counsel seek reimbursement for litigation expenses of $1,851,773.86. The settlement notice provided that counsel could seek reimbursement of expenses up to $2,100,000, and no objections have been filed to that level. Counsel have supplemented the record with expense reports which provide necessary detail on the sources of those ex-penses. (Document No. 93, Compendium of Fee Affidavits). As pronounced by other courts, " '[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... *reasonable* litigation expenses from that fund.' " *Ikon*, 194 F.R.D. at 192 (quoting *Lachance v. Harrington*, 965 F.Supp. 630, 651 (E.D.Pa.1997)) (emphasis in original). While the expenses here are high in the abstract, I conclude that they were incurred for reasons appropriate to the litigation, are reasonable and should be reimbursed. Counsel has attested to the unreimbursed expenses paid out, and I see no reason to disallow any particular category or claim.

### D. *Incentive Awards*

 Plaintiffs also move this Court to approve incentive awards to the following class representatives in the amount of $10,000: Mark Fisher, Michael Golding, Jeffrey Heydt, IRA, and Maurice E. Levie. The settlement notice provided that incentive awards of up to $10,000 for four of the class representatives would be sought, and no objections to those awards have been filed. Courts in this Circuit have granted requests for incentive awards.[6] *See, e.g., Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D.Pa.2000); *Lazy Oil Co. v. Wotco Corp.*, 95 F.Supp.2d 290 (W.D.Pa.1997), *aff'd*, 166 F.3d 581 (1999); *Pozzi v. Smith*, 952 F.Supp. 218 (E.D.Pa.1997). I conclude that it is fair and appropriate to compensate these class representatives for time spent on matters connected with this litigation. The record, however, lacks any evidentiary support for the fact that these

---

**6.** This Court acknowledges that under the Private Securities Litigation Reform Act enacted by Congress in 1995, 15 U.S.C. § 78u–4(a)(2)(A)(vi), class representatives cannot accept payment beyond his, her, or its *pro rata* share of the settlement or final judgment. However, since this Act does not apply retroactively, this prohibition is not implicated in the matter before me. *See Pozzi*, 952 F.Supp. at 228 n. 8 (recognizing the same and approving incentive award).

four representatives expended time and effort which would justify the incentive awards. Counsel for plaintiffs represented to this Court at the fairness hearing that these four individuals are worthy of such an award. No affidavits in support, however, have been submitted. I therefore conclude that upon submission of affidavits attesting to the fact that time and effort were spent by the designated class representatives pursuing this litigation and providing a general description of same, this Court will approve incentive awards. The attached Order will provide deadlines by which such submissions shall result.

## IV. CONCLUSION

This Court will approve the class action settlement of $48,000,000 as fair, reasonable and adequate under Federal Rule of Civil Procedure 23. This Court will further approve the petition for attorneys' fees in the amount of $16,000,000, as well as the petition for reimbursement of expenses of $1,851,773.86. Upon receipt of affidavits in support of the incentive awards, this Court will approve such awards.

An appropriate Order follows.

### *ORDER AND FINAL JUDGMENT*

**AND NOW,** on this 27th day of December, 2001, upon consideration of the Motion of Co-lead Counsel for Plaintiffs in Support of the Proposed Class Settlement and the Joint Petition for an Award of Counsel Fees and Reimbursement of Expenses, (Document No. 91), the Memorandum of Law of Plaintiffs in Support of Their Motion for Final Approval of the Proposed Settlement and the Plan of Allocation, (Document No. 89), the Memorandum of Law of Plaintiffs in Support of Their Application for Attorneys' Fees and Reimbursement of Expenses, (Document No. 90), the Memorandum of Law of Plaintiffs in Further Support of Their Motion, (Document No. 96), and the Memorandum of Law of Defendants in Support of Final Approval of Class Settlement, (Document No. 97), and having held a hearing on December 20, 2001 to determine: (1) whether the terms and conditions of the Stipulation and Agreement of Settlement dated October 23, 2001 (the "Stipulation") are fair, reasonable and adequate for the settlement of all claims asserted by the Class against the Defendants in the Second Consolidated Amended Class Action Complaint (the "Complaint") now pending in this Court under the above caption, and should be approved; (2) whether judgment should be entered dismissing the Complaint on the merits and with prejudice in favor of the Defendants and as against all persons or entities who are Class Members herein who have not requested exclusion therefrom; (3) whether to approve the Plan of Allocation as a fair and reasonable method to allocate the settlement proceeds among the Class Members; and (4) whether and in what amount to award Plaintiffs' Counsel fees and reimbursement of expenses, and incentive awards to the Class Representatives, and for the reasons set forth in the foregoing memorandum, as well as having made the following findings and conclusions:

A. The Court has jurisdiction over the subject matter of the Action, the Plaintiffs, all Class Members, and the Defendants, pursuant to 28 U.S.C. § 1331. All capitalized terms used herein shall have the meanings defined in the Stipulation.

B. By Order dated November 15, 1999, this Action was preliminarily certified to proceed as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased General Instrument common stock during the period from March 21, 1995 through October 18, 1995, inclusive (the "Class Period"), and who suffered damages thereby. The facts

underlying that Order have not changed since the issuance of that Order and, therefore, for the reasons provided in that Order, this lawsuit meets the requirements of Rule 23 for maintaining this law suit as a class action.

The prerequisites for a class action under Fed.R.Civ.P. 23(a) and (b)(3) have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representatives are typical of the claims of the Class they seek to represent; (d) the Class Representatives have and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy; and (g) counsel preliminarily approved to represent the class, possess now and have possessed throughout the litigation the requisite competence, experience, dedication, knowledge, training, objectivity and resources to adequately litigate the claims and defenses raised by the parties to this Class action and remain approved as counsel for the Class.

C. More than 24,700 individual copies of a notice of the proposed settlement and the hearing substantially in the form approved by the Court was mailed to all persons or entities reasonably identifiable, who purchased the common stock of General Instrument Corporation ("General Instrument") during the Class Period, except those persons or entities excluded from the definition of the Class, and that a summary notice of the hearing substantially in the form approved by the Court was published in the national edition of *The Wall Street Journal* pursuant to the direction of the Court. Such persons or entities were notified, *inter alia*, of the proposed settlement, their right to file objections, and the date of the fairness hearing. Notice of the pendency of this Action as a class action and of the proposed Settlement was given to all Class Members who could be identified with reasonable effort. This constitutes a sufficient notice process complying in all respects with the Rules of Civil Procedure, the Orders of this Court, and the constitutional requirements of due process.

D. The Court has considered all matters, including objections, submitted to it at the hearing and otherwise.

E. The Court has considered and determined the fairness and reasonableness of the Settlement, the Plan of Allocation and an award of attorneys' fees and expenses requested.

F. *Settlement.*

(a) The proposed Stipulation and Agreement of Settlement, filed in this action on October 23, 2001, (Document No. 84), embodies the terms of the Proposed Settlement.

(b) The Proposed Settlement is the result of non-collusive, intensive negotiations between experienced counsel.

(c) For all of the reasons provided in the foregoing memorandum, the Proposed Settlement fairly, reasonably, and adequately advance the interest of the Class, and the plan of Allocation is fair and reasonable.

G. *Counsel Fees and Costs.* For all of the reasons provided in the foregoing memorandum, the request for counsel fees and reimbursement of expenses is fair and reasonable.

H. *Incentive Awards.* The request for incentive awards to four Class Representa-

tives will be considered under a separate Order of this Court.

**ACCORDINGLY IT IS HEREBY ORDERED THAT:**

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure this Court finally **CERTIFIES** this action as a class action on behalf of all persons who purchased the common stock of General Instrument during the period from March 21, 1995 to October 18, 1995 and who suffered damages as a result. Excluded from the Class are the defendants (General Instrument Corporation, Forstmann Little & Co. and related entities, Daniel F. Akerson, Richard S. Friedland, Laurence L. Osterwise, Charles T. Dickson, Nicholas C. Forstmann, Theodore J. Forstmann, and Steven B. Klinsky); the officers, directors, partners, principals, affiliates, subsidiaries, and parents of any defendant; members of the immediate family of any individual defendant; any entity in which any excluded person or entity has a controlling interest; and the legal representatives, heirs, successors, and assigns of any excluded person or entity. Also excluded from the Class are the persons and/or entities who requested exclusion from the Class as listed on Exhibit 1 annexed hereto.

2. The Settlement is **APPROVED** as fair, reasonable and adequate; the Class Members and the parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation dated October 23, 2001. (Document No. 84).

3. The Complaint is **DISMISSED** with prejudice and without costs, except as provided in said Stipulation, as against the Defendants.

4. Class Members and the successors and assigns of any of them (except those members specifically excluded) are permanently **BARRED** and **ENJOINED** from instituting, commencing or prosecuting, either directly or in any other capacity, any

and all claims, demands, rights or causes of action, damages, costs, losses, expenses, compensation or liabilities of any nature whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in any forum by Plaintiffs or the Class Members or any of them, or the successors or assigns of any of them, whether directly, indirectly, representatively or in any other capacity, against any of the Released Parties arising out of purchases of General Instrument common stock during the Class Period which have been or could have been asserted by any Class Member which arise out of, or relate in any way to the allegations, transactions, facts, matters, or occurrences, representations or omissions involved, set forth or referred to in this Action (the "Settled Claims") against any and all of the Defendants, and with respect to each of the Defendants, their past and present directors, officers, employees, partners, principals, agents, underwriters, issuers, insurers, co-insurers, reinsurers, shareholders, attorneys, accountants, auditors, banks and investment bankers, advisors, personal and legal representatives, predecessors, successors, indemnitors, indemnitees, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, estates, associates, related and affiliated entities, any entity in which any of them has a controlling interest, any members of their immediate families, any trust of which any of them is the settlor or which is for the benefit of any of them and/or member(s) of their families, and anyone claiming by, through or under any of the foregoing, whether by statute, rule, contract or otherwise (the "Released Parties"). The Settled Claims are compromised, settled, released, discharged and dismissed as against the Released Parties on the merits and with prejudice by virtue

of the proceedings herein and this Order and Final Judgment.

5. The Defendants and the successors and assigns of any of them, are permanently **BARRED** and **ENJOINED** from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them or the successors and assigns of any of them against any of the Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (the "Settled Defendants' Claims") against any of the Plaintiffs, Class Members or their attorneys. The Settled Defendants' Claims are compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

6. Neither this Order and Final Judgment, the Stipulation, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a) offered or received against the Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action, or of any liability, negligence, fault, or wrongdoing of the Defendants;

(b) offered or received against the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any oral or written representation approved or made by any Defendant, or against the Plaintiffs and the Class as evidence of any infirmity in the claims of Plaintiffs and the Class;

(c) offered or received against the Defendants or against the Plaintiffs or the Class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Stipulation, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that Defendants may refer to the Stipulation to effectuate the liability protection granted them thereunder;

(d) construed against the Defendants or the Plaintiffs and the Class as an admission, concession or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

(e) construed as or received in evidence as an admission, concession or presumption against Plaintiffs or the Class or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Fund.

7. The Plan of Allocation is **APPROVED** as fair and reasonable, and Plaintiffs' Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions.

8. Plaintiffs' Counsel are awarded 33⅓ % of the Settlement Amount in fees, which the Court finds to be fair and reasonable, and $1,851,773.86 in reimbursement of expenses, which amounts shall be paid to Plaintiffs' Co–Lead Counsel from the Settlement Fund with interest from the date such Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns. The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion of Plaintiffs' Co–Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Action.

9. This Court shall retain jurisdiction over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the Class Members.

10. All parties shall comply with their obligations under the Settlement and Plan of Allocation.

11. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

12. There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Stipulation and Agreement of Settlement dated October 23, 2001, (Document No. 84), is hereby made part of the record of this case, is incorporated into this Order by reference thereto, and as such shall have the full force and effect of the Order of this Court.